UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          Plaintiff,<br>vs.<br><br>MICHAEL DAVID SARGENT,<br><br>          Defendant. | 3:05-cr-00118-RRB-JDR<br><br>**RECOMMENDATION<br>REGARDING<br>MOTION FOR CHANGE OF<br>PLACE OF TRIAL**<br><br>(Docket No. 25) |

Defendant **Michael David Sargent** moves the court pursuant to Federal Criminal Rule 18 to change the place of trial from Anchorage to Fairbanks. Docket No. 25. The motion is opposed by the government. Docket No. 27. Upon due consideration of the pleadings and record herein the magistrate judge recommends that the motion be denied. This case was filed in Anchorage by the prosecutor. The District of Alaska comprises one judicial district which encompasses the entire State of Alaska. 28 U.S.C. § 81A. Sargent acknowledges that he has no right to a trial in a particular location within the district unless he can demonstrate prejudice that would arise if the trial were held in the location presently set. Sargent seeks a trial

in Fairbanks on grounds that the only daily newspaper in Anchorage has published prejudicial and inflammatory articles about this case. Specifically he refers to coverage in the articles addressing the prosecutor's characterizations of Mr. Sargent as mentally ill and a person who could be considered dangerous. In that regard the prosecutor was quoted as stating, "the question that isn't answered is how he had or kept [his federal firearm's dealer permit] with a mental health history." The defendant argues that moving his trial to Fairbanks would schedule it in a location unexposed to and unaffected by the issues of his mental status, alcohol or drug abuse, potential dangerousness or treatment of animals.

## DISCUSSION

Sargent has the right to a fair trial conducted before a panel of impartial and indifferent jurors. Irvin v. Dowd, 366 U.S. 717, 722 (1961). A court must grant a motion to change venue "if prejudicial pretrial publicity makes it impossible to seat an impartial juror." Ainsworth v. Calderon, 138 F.3d 787, 795 (9th Cir. 1998), as amended, 152 F.3d 1223. At this pretrial stage the court conducts an independent review of the record to determine whether there has been such a degree of prejudice against the defendant that a fair trial is impossible. See Harris v. Pulley, 885 F.2d 1354, 1360 (9th Cir. 1988).

The defendant has included in his motion copies of two news articles which he contends are prejudicial and inflammatory against the defendant. Since

jury selection has not yet occurred it is premature to determine whether actual prejudice can be shown. Potentially an impartial jury could be empaneled based upon the voir dire process and a finding that any jurors could lay aside any demonstrated partiality or prejudice.

Sargent argues that prejudice can be presumed based upon the alleged adverse publicity. Prejudice, however, is presumed only in extreme instances "when the record demonstrates that the community where the trial is to be held has been saturated with prejudicial and inflammatory media publicity about the crime." Ainsworth I, 138 F.3d at 795. Three factors have been identified for consideration in determining presumed prejudice. The court considers the following: (1) whether there has been a "barrage of inflammatory publicity immediately prior to trial, amounting to a huge . . . wave of public passion"; (2) whether the news accounts were primarily factual because such accounts tend to be less inflammatory than editorials or cartoons; and (3) whether the media accounts contain inflammatory or prejudicial material not admissible at trial. *Id.*

Applying these factors to the instant case does not compel a finding that the venue [Anchorage] has been so saturated with prejudicial and inflammatory media publicity about the crime sufficient for a presumption of prejudice.

The Anchorage Daily News article published Wednesday, December 21, 2005 on page B-2 is entitled "Suspect in Postal Theft Released." The subtitle

reads "Custody: Man who Allegedly Threatened Co-workers Allowed to Stay with Elderly Parents." The article addresses the bail status of Sargent and reports the arguments made by Assistant U.S. Attorney Retta-Rae Randall, in her argument that Sargent should remain behind bars while awaiting trial. The account appears to be factual in reporting arguments that were made by both the prosecutor and the defense. According to AUSA Randall, Sargent had previously been fired and charged with making threats against a co-worker, but the news article reflects that those charges were dismissed. According to AUSA Randall, Sargent had access to a large number of weapons and had a history of mental illness and alcohol abuse. The article reports defense statements made in court that Sargent had no criminal record and that the failure to charge the postal service for bulk mailings is not a violent crime. The article reports that Sargent's conduct during arrest, booking and incarceration was cooperative and pleasant and not suggestive of violence, agitation, intoxication of mental illness. The article refers to a search of Sargent's house by investigators who concluded that the house was uninhabitable due in part to improperly cared for cats. The news article reflects that Sargent was not released to return to his house, that his cats were taken to temporary homes and that, although he was a gun dealer with a federal license, his firearms have been removed by the Anchorage Police Department. The news article reflects that Sargent underwent a psychological evaluation before being released and that evaluation

concluded that he was not a risk if he followed the conditions of his release. The news article contains statements by Sargent's attorney, Federal Defender Mary Geddes; the article does not report only the government's view point. According to Ms. Geddes, as quoted in the article, "Sargent was liked by his co-workers and statements and conduct now characterized as potentially threatening to co-workers . . . were considered jokes at the time and were never reported as inappropriate, harassing, threatening to any supervisor or law enforcement." The article also reflects that after his arrest Sargent's parents received about thirty calls from individuals offering assistance and identifying themselves as friends.

      The second Anchorage Daily News article dated December 10, 2005 was entitled "Postal Worker accused of letting bulk mail pass through for free-$400,000; Man reportedly said he'd like to bankrupt Postal Service." The article begins by stating that an unhappy 29 year Anchorage postal employee, Michael Sargent, was charged Friday with stealing and disposing of public records. The December 10 news article also quotes the prosecutor as indicating that Sargent is a disgruntled public employee who has been charged with stealing and disposing of public records. It states that he was filmed 13 times putting postal papers in his brief case without recording them in a computer after receiving bulk mail at the post office near the International Airport. The article states that after he was passed over for a promotion in December he became angry and took 5 weeks of vacation time. The

article states that he "joked" with his co-workers about trashing documents and that he carried empty firearm shell casings to work which he displayed when confronted with his mistakes by a co-worker.

The defendant's showing in support of his motion for change of trial situs based on the nature and extent of pretrial publicity does not warrant a change of venue. There is no indication that the case has generated continuous publicity about the alleged crime or that Anchorage has been saturated with prejudicial and inflammatory media publicity about the crime. There is no indication that detailed publicity might resume as the trial approaches. Sargent's motion does not address the public's response to the publicity. There is no indication that the Anchorage jury pool recognizes the case from media coverage. There is no indication that the media has published editorials or letters to the editor addressing the prosecution of Sargent. The defendant's reference to someone going "postal" is readily dispensed with in regard to the instant motion. There is no reference in a news article to Sargent "going postal." There is no reference in the articles to Sargent harming any of the animals. The two newspaper articles published in the Anchorage Daily News on December 10 and December 21, 2005, to the extent that they are not factual, refer to the allegations of counsel for both the United States and the defendant and appear to address the bail status of the case rather than the ultimate determination of guilt.

The instant case has not drawn the widespread publicity or notoriety as those cases cited by Sargent. Nor does the resulting prejudice approach that displayed in the more sensational cases such as Irvin v. Dowd, 366 U.S. 717 (1961); Rideau v. Louisiana, 373 U.S. 723 (1963); and Sheppard v. Maxwell, 384 U.S. 333 (1966). The instant case lacks the pervasive media coverage or quality of coverage that can give rise to a presumption of prejudice. Because of the publication of a similar news article in the Fairbanks Daily News-Miner on December 11, 2005 a similar questioning of jurors during voir dire in jury selection would likely be conducted by counsel and or the court during jury selection if the case were tried in Fairbanks.

Rule 18 of the Federal Rules of Criminal Procedure provides that the court should set the place of trial within the district with "due regard for the convenience of the defendant and the witnesses, and the prompt administration of justice." Unless the administration of justice tips decidedly in favor of a trial in Fairbanks rather than Anchorage then the request for a change of place of trial to Fairbanks should be denied. No such showing presently appears on the record. Although the defendant references Rule 18 he sets forth no reasons why convenience to him necessitates a trial in Fairbanks. The government states that all of its trial witnesses reside in Anchorage except for one agent located in Seattle, Washington. Accordingly, the motion for change of place of trial to Fairbanks should

be DENIED.  IT IS SO RECOMMENDED.  Trial in this matter is presently set to commence January 30, 2006.

DATED this 20th day of January, 2006, at Anchorage, Alaska.

                                           JOHN D. ROBERTS
                                           United States Magistrate Judge

Pursuant to D.Ak.L.M.R. 6(a), a party seeking to object to this proposed finding and recommendation shall file written objections with the Clerk of Court no later than **NOON, Wednesday, January 25, 2006**, to object to a magistrate judge's findings of fact may be treated as a procedural default and waiver of the right to contest those findings on appeal.  McCall v. Andrus, 628 F.2d 1185, 1187-1189 (9th Cir.), cert. denied, 450 U.S. 996 (1981).  The Ninth Circuit concludes that a district court is not required to consider evidence introduced for the first time in a party's objection to a magistrate judge's recommendation United States v. Howell, 231 F.3d 615 (9th Cir. 2000).  Objections and responses shall not exceed **five (5) pages** in length, and shall not merely reargue positions presented in motion papers.  Rather, objections and responses shall specifically designate the findings or recommendations objected to, the basis of the objection, and the points and authorities in support.  Response(s) to the objections shall be filed on or before **NOON, Friday, January 27, 2006**.  The parties shall otherwise comply with provisions of D.Ak.L.M.R. 6(a).

Reports and recommendations are not appealable orders. Any notice of appeal pursuant to Fed.R.App.P. 4(a)(1) should not be filed until entry of the district court's judgment. See <u>Hilliard v. Kincheloe</u>, 796 F.2d 308 (9th Cir. 1986).